## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**DOROTHY DAVIS,**

      **Plaintiff,**

**vs.**                                                          **No.  02cv0412 JHG**

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's (Davis') Motion to Reverse and Remand the
Administrative Agency Decision **[Doc. No. 6]**, filed August 6, 2002, and fully briefed on October
7, 2002.  The Commissioner of Social Security issued a final decision denying Davis' claim for a
period of disability and disability insurance benefits.  Having considered the arguments, pleadings,
administrative record, relevant law, and being otherwise fully informed, the Court finds the
motion to remand is well taken and will be GRANTED.

### I.  Factual and Procedural Background

Davis, now almost 50 years old (date of birth May 3, 1953), filed her application for
disability insurance benefits on October 2, 1998, alleging disability since August 29, 1998 (Tr.
58), due to carpal tunnel syndrome, status post surgery of the distal clavicle on the right side, and
cervical disc bulge. Davis has a tenth grade education and past relevant work as a cashier/clerk,
packager, and school bus driver.  On May 13, 2000, the Commissioner's Administrative Law
Judge (ALJ) denied benefits, finding that Davis' impairments were severe but did not singly or in

combination meet or equal in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1. The ALJ further found Davis retained the residual functional capacity (RFC) for work at the sedentary and light exertional levels.  Tr. 15.  As to her credibility, the ALJ found Davis' testimony was inconsistent with the objective evidence. Tr. 14.  Davis filed a Request for Review of the decision by the Appeals Council.  On February 25, 2002, the Appeals Council denied Davis' request for review of the ALJ's decision.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Davis seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while

the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  *Thompson v. Sullivan*,  987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse, Davis makes the following arguments: (1)  the ALJ erred in her assessment of credibility; and (2) the ALJ erred in her RFC findings and in mechanically applying the Medical-Vocational Guidelines (the grids).

**Credibility Determination**

While it is true that this Court generally defers to credibility determinations of the ALJ, such deference is not absolute.  *Thompson v. Sullivan*, 987 F.2d at 1490.  When the ALJ's credibility determination is not supported by substantial evidence, remand is required.  *Kepler v. Chater*, 68 F.3d 387, 391-92 (10th Cir. 1995).  In this case, Davis contends the ALJ's credibility determination is not supported by substantial evidence and based "almost entirely on an erroneous impression as to the extent and nature of [her] travel."  Pl.'s Mem. in Supp. of Mot. to Reverse at 9.

In her Decision, the ALJ stated:

> I find the claimant's statements and testimony inconsistent with the objective evidence.  Ms. Davis has stated that she began experiencing frequent pain dating back to August 1996, but less than a year after the alleged onset date (June 1997), Dr. Morgan recommended multidisciplinary pain management, which she declined. Dr. Morgan further reported that the claimant would not be seen again until she returned to Colorado – when it was, "convenient to her."  The information gleaned from this report is not suggestive of severe pain and restriction as alleged by the claimant.  In fact it is indicative of symptoms imposing much less limitations (Exhibit 2F/4).  Moreover, in 1998, Dr. Covey reported the claimant was going on a six month vacation.  The claimant's vacation time is further concurred by medical records submitted by sources from various locales around the country (Exhibits 1F, 2F, 3F).  In my opinion, the claimant' allegations of pain and restrictions are not credible.  I find it incredulous for anyone with the degree of impairment as alleged by claimant, to be capable of traveling for such a protracted period (Exhibits 2F/4, 3F/3).

Tr. 14.  At the hearing, the ALJ questioned Davis about her traveling.  Tr. 36-37.  The ALJ implied that she was questioning Davis about the traveling because she wondered why the medical

4

records were from "all over the country."  Tr. 37.  The ALJ found Davis' "extensive travel around the country" supported a finding that Davis retained the RFC for sedentary and light work activity.  Tr. 15.  After the ALJ issued her decision, Davis submitted an affidavit, explaining why she and her husband had traveled to Arkansas, Montana, and Colorado.  Tr. 207.  According to Davis' affidavit, she and her husband could not afford to rent a place when she became disabled. Their financial situation required them to live in an RV trailer.  In fact, the RV trailer was their home.  Davis and her husband relied on the generosity of friends and relatives, often parking at their homes.  What the ALJ construed as "vacations" were trips by Davis and her husband to friends and relatives that offered their assistance.  The ALJ should have questioned Davis at the hearing regarding her suspicions.

The ALJ also misconstrued Dr. Morgan's report.  Dr. Morgan's report indicates he asked Davis to call him at least once a week over the next four to six weeks so that he could adjust her medications.  Tr. 132.  Dr. Morgan also noted he would see Davis when she was in Colorado and it was convenient for her.  *Id.*  Davis had informed Dr. Morgan that she was returning to Montana that day.  Tr. 131.  However, Dr. Morgan was going to continue to care for Davis for at least the next six weeks.  The Court will remand to allow the ALJ to reconsider her credibility determination.

## RFC Determination and Mechanical Application of the Grids

At step five of the sequential evaluation process, the ALJ found Davis "retain[ed] the residual functional capacity for work at the sedentary and light exertional levels."  Tr. 15.  The ALJ concluded that the evidence supported a finding that Davis could perform the demands of the **full range** of sedentary and light work.  Tr. 16.  The ALJ also found "no nonexertional

limitations," applied the grids and found Davis was not disabled.  Tr. 15.  Substantial evidence

does not support these findings.  Dr. Morgan, a specialist in Physical Medicine, Rehabilitation,

and Pain Management, found "permanent restrictions in the sedentary work category."  Tr. 131.

He specifically recommended Davis have job task rotation, frequent position changes, limited

overhead reaching, limited bending at the waist, and no climbing of ladders.  *Id.*  Dr. Morgan also

found Davis had reached "Maximum Medical Improvement."  *Id.*  In her decision, the ALJ also

noted "Dr. Trang's residual functional capacity is consistent with less than a full range of

sedentary work."  Tr. 15.

It is well established that the grids should not be applied conclusively "unless the claimant

could perform the **full range of work** required of the [pertinent RFC] category on a daily basis

and unless the claimant possesses the physical capabilities to perform most of the jobs in that

range."  *Ragland v. Shalala*, 992 F.2d 1056, 1057 (10th Cir. 1993)(emphasis added).  Moreover,

"resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as

pain."  *Id.*

In this case, the record is replete with objective medical evidence supporting Davis'

allegations of significant pain.  On September 23, 1996, Dr. Johnson evaluated Davis for right

shoulder pain.  Tr. 123.  Dr. Johnson performed a physical examination on Davis and found she

had tenderness over the AC joint and "intermittent shoulder pain with limitation of movement

overhead and pain over the top of her shoulder with overhead movement."  *Id.*  Dr. Johnson

recommended injecting the joint and the use of nonsteroidal anti-inflammatory medications.  If

these treatments did not provide relief, Dr. Johnson recommended excising the distal clavicle.  Dr.

Johnson tried the less invasive and more conservative treatments without success.  Tr. 122.  Thus,

on December 9, 1996, Dr. Johnson evaluated Davis for excision of the distal clavicle on her right side.  *Id.*  Dr. Johnson explained that the risk of this operation, including the risk of persistent scar tenderness in this area, the risk of infection, the risk that surgery may not eliminate all her pain, and the risk of shoulder weakness.  *Id.*  On December 10, 1996, Davis had excision of her right distal clavicle.  Tr. 127.   After the surgery, Davis continued to experience pain and weakness of the right shoulder.  Tr. 120.

On April 29, 1996, Davis returned to see Dr. Thomas Morgan.  Tr. 138.  Dr. Morgan treated Davis for her carpal tunnel syndrome in 1995.  Davis reported the shoulder pain interfered with her sleep and bothered her with any overhead reaching.  Dr. Johnson diagnosed Davis with subacromial bursitis of the right shoulder and injected her subacromial bursa with Celestone (corticosteroid) and Marcaine.

On June 16, 1997, Dr. Morgan diagnosed Davis with "resulting sympathetically maintained pain in the right upper extremity."  Tr. 133.  Dr. Morgan reported Davis was "really no better since surgery and if anything she still has quite a bit of shoulder pain that wakes her from her sleep." *Id.*  Dr. Morgan recommended a multi-disciplinary pain management program and a "'neuropathic' pain management medication regimen." *Id.; see also* Tr. 136, 137, 138.

On August 28, 1998, Dr. Covey saw Davis at the Little Rock Pain Clinic for complaints of neck and "right paraspinous discomfort with some radiation into the upper arm."  Tr. 157.  Dr. Covey prescribed Darvocet, a narcotic analgesic, and a TENS unit. *Id.*; *see also* Tr. 159, 169.

Finally, on June 28, 1999, Dr. Liem Q. Trang evaluated Davis for neck pain.  Tr. 198.  At that time, Davis was taking Darvocet-N 100 mg every four hours.  Dr. Trang diagnosed Davis with cervical radiculopathy and recommended a cervical epidural steroid injection. *Id.*  Davis

returned to Dr. Trang for follow-up on July 8, 1999.  Tr. 196.  On examination, Dr. Trang found

"moderate muscle spasm, tenderness in cervical paravertebral muscle mass especially on right

side."  *Id.*  Dr. Trang diagnosed Davis with cervical disk bulge and myofascial pain syndrome.

Davis had the cervical epidural steroid injection on July 8, 1999.  Tr. 197.   On July 12, 1999,

Davis reported to Dr. Trang that, although the steroid injection had helped, she was still

experiencing pain.  Tr. 195.  Dr. Trang prescribed Darvocet-N 100 mg for the pain.  *Id.*  Davis

also had a second cervical epidural steroid injection on July 26, 1999.  Tr. 194, *see also* Tr. 193

 (requesting cervical epidural steroid injection for neck pain), Tr. 191 ("positive muscle spasm and

tightness in the cervical and lumbar area" with thoracic epidural steroid injection administered).

From the record it is clear that Davis suffered from significant pain that precluded the

mechanical application of the grids.  On remand, the ALJ should reevaluate Davis' complaints of

pain as set forth in *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).   The ALJ should also

consult with a vocational expert.

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and Remand the Administrative Agency Decision **[Doc. No. 6]**, filed August 6, 2002, is GRANTED.  This matter is remanded to allow the ALJ to reconsider her credibility determination, reevaluate Davis' residual functioning capacity, and consult with a vocational expert.

A judgment in accordance with this Memorandum Opinion and Order will be entered.


_____
**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**